IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MOUNTAIN DUDES, LLC, a Missouri limited liability company,<br><br>           Plaintiff,<br><br><br><br>     vs.<br><br><br>SPLIT ROCK, INC., a Utah corporation, *et al.*,<br><br>           Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br><br><br><br>Case No. 2:08-cv-940-CW<br>Consolidated Action No. 2:09cv540 CW |

In this diversity action, Plaintiff Mountain Dudes, LLC has sued various Defendants over a series of events involving a real estate purchase. In short, Mountain Dudes purchased a home in Southern Utah that featured nine arches as part of its design. After Mountain Dudes purchased the home, two of the arches were removed. Mountain Dudes has sued numerous Defendants in connection with the removal of the arches and related events. Now before the court are multiple motions by the parties.

## FACTS

## I.        THE ASSOCIATION AND THE PROPERTY

In May 1995, Entrada at Snow Canyon Property Owners Association, Inc. (the "Association") was incorporated. The Association was created to operate a residential community in Washington County, Utah known as Entrada at Snow Canyon (the

"Development"). On February 6, 1996, the Development's Declaration of Covenants, Conditions and Restrictions was recorded with the Washington County Recorder. Various amendments to that declaration were subsequently recorded with the Washington County Recorder, including a Corrective Entrada at Snow Canyon Third Amended and Restated Declaration of Covenants, Conditions, and Restrictions (the "CC & Rs"), recorded on September 12, 2006. The property involved in this suit is a home and lot located on lot 75 of the Kachina Springs subdivision of the Development (the "Property"). The CC & Rs governed the parties and the Property at the time of the relevant events in this action.

## II. THE CC & Rs AND THE ARTICLES

The CC & Rs designate certain portions of the Development's common areas as limited common areas. The CC & Rs reserve these limited common areas, appurtenant to individual units, for the exclusive use of the owner of a specific unit to the exclusion of all other owners. The CC & Rs also provide for the creation of the Entrada Design Review Committee (the "Design Committee"). The Design Committee approves construction and maintenance of any building, fence, wall or other structure in the limited common areas. Further, the CC & Rs grant the Association a broad easement to remove or repair any existing violation within the Development if the violating unit's owner fails to do so.

Section 5 of the Associations' articles of incorporation outlines the procedure for establishing a change in membership in the Association. Section 5 provides, in relevant part:

> Change of membership shall be established by recording in the Official Records of Washington County, Utah, a deed or other instrument establishing record fee title of such Unit and by delivery to the Association of a certified copy of such instrument. The owner designated by such instrument or certificate thus becomes

a member of the Association, and the membership of the prior owner shall be terminated.

(Articles § 5, Dkt. No. 89, Ex. A).[1]

Section 3.1 of the CC & Rs also addresses the acquisition of membership rights in the Association. It provides, in relevant part:

> Every Owner, as defined in Section 1.14, shall be deemed to have a membership in, and be a member of, the Association. No Owner, whether one or more Persons, shall have more than one membership per Unit owned. In the event the Owner of a Unit is more than one Person, votes and rights of use and enjoyment shall be as provided herein. . . The Membership rights of a Unit owned by a corporation or partnership shall be exercised by the individual designated by the Owner in a written instrument provided to the Secretary, subject to the provisions of this Declaration and the By-Laws.

(CC & Rs §3.1, Dkt No. 70, Ex. B).

## III.     THE PURCHASE AND THE LEASE-BACK

On October 4, 2006, Mountain Dudes, entered into a Real Estate Purchase Contract (the "REPC") with Split Rock, Inc. ("Split Rock") to purchase the Property for $2,200,000. Split Rock Homes built the house, and Split Rock Realty listed it for sale. The house featured a set of nine large torii arches leading up to its front entry and continuing into the living area within. The home and its arches received attention in the 2007 Parade of Homes for the St. George area and the Winter 2008 edition of Utah Style and Design Magazine. Mountain Dudes asserts that the arches and the publicity associated with them were material factors in Mountain Dudes' decision to purchase the Property. Two of the nine arches were located in the Property's limited common area.

---

[1] Note that the Articles (along with other documents) are incorporated by the CC & Rs. For convenience, the court will refer to the CC & Rs themselves as well as the incorporated documents as the CC & Rs in this Order.

Split Rock has submitted an affidavit stating that because the Design Committee had not previously required approval for homes like that on the Property, Split Rock did not believe that the Property or its arches required the Design Committee's approval. Split Rock did not submit the design for approval prior to February 12, 2007, the date Mountain Dudes closed on the purchase of the Property.

Shortly after closing on its purchase, Mountain Dudes leased the Property back to Split Rock for a period of twelve months to be used for sales and marketing purposes. Mountain Dudes did not deliver to the Association a certified copy of the deed or other instrument establishing record fee title to the Property. Mountain Dudes also did not provide the Association with a written instrument designating an individual to exercise membership rights on its behalf.

## IV. THE REMOVAL OF THE ARCHES

As discussed further below, a member of the Design Committee first expressed concerns that the Property "might encroach the established front setbacks of the development" in a meeting on January 30, 2007. (Design Committee Meeting Minutes dated January 30, 2007, 9, Dkt. No. 54, Ex. I.) The notation does not expressly refer to the arches. That meeting was held nearly two weeks before Mountain Dudes closed on its purchase of the Property. On March 6, 2007, a few weeks after Mountain Dudes closed on the Property, the Design Committee met and discussed the design of the Property. The discussion included whether the two arches in the limited common area were located within the required setback and whether the Property's design should have been brought before the Design Committee for approval prior to construction. (*See* Design Committee Meeting Minutes dated March 6, 2007, 7, Dkt. No. 89, Ex. E).

On March 20, 2007, the Association's Board of Trustees met and discussed various concerns relating to the Property, including "the institutional problems of enforcement" that would occur if the arches were allowed to remain. (Association Meeting Minutes dated March 20, 2007, 3, Dkt. No. 89, Ex. G). Several other meetings about the arches took place until the Design Committee reached a final conclusion on October 2, 2007. At a meeting on that date, after reviewing several objections to the Property's design, committee member Ron Slane made a motion to remove the two arches located in the limited common area. Joseph Platt seconded the motion. The motion was carried with votes from Mr. Slane, Mr. Platt, Kent Bylund and Dara Tancredi in favor, with two opposing votes. (Design Committee Meeting Minutes dated October 2, 2007, 6, Dkt. No. 70, Ex. I). Significantly, Mr. Platt and Mr. Bylund were both principals of Split Rock and members of the Design Committee at the time the vote was taken.

After the Design Committee's decision, Split Rock removed the two arches from the property's limited common area in February 2008. Split Rock had possession of the Property at the time under the lease back agreement. Split Rock, however, did not notify Mountain Dudes that the arches were to be removed before the removal. Mountain Dudes did not find out about the removal until some time later when it discovered the removal on its own.

## V.    THE LITIGATION

On December 5, 2008, Mountain Dudes filed this action, alleging sixteen causes of action. Recently, the court allowed Mountain Dudes to amend the complaint to clarify diversity jurisdiction. The claims remain the same after that amendment and are as follows: (1) "Breach of Contract;" (2) "Breach of the Implied Covenant of Good Faith and Fair Dealing;" (3) "Fraudulent Nondisclosure and Concealment;" (4) "Fraud;" (5) "Constructive Fraud;" (6) "Civil Conspiracy;"

(7) "Breach of Fiduciary Duties;" (8) "Trespass and Waste;" (9) "Intentional and Negligent Misrepresentation;" (10) "Rescission;" (11) "Breach of General Warranty Deed;" (12) "Lack of Notice and Due Process and Breach of CC&Rs;" (13) "Ultra Vires;" (14) "Alter Ego/Piercing the Corporate Veil;" (15) "Promissory Estoppel;" and (16) "Negligence." Not all claims are against all Defendants.

On June 17, 2009, Mountain Dudes filed a motion seeking partial summary judgment against Split Rock and other Defendants on the claims for misrepresentation, fraudulent nondisclosure, and waste. Mountain Dudes also sought judgment against Split Rock for breaching the section of the REPC in which Split Rock warranted that the property complied with the CC & Rs.

On November 19, 2009 the court granted summary judgment against Split Rock on the issue of liability for breach of the REPC, but denied the remainder of Mountain Dudes' motion. The court left open the question of how much damage Mountain Dudes suffered as a result of Split Rock's breach of the REPC.

## VI.     The Settlement Agreement and the Consolidated Action

On September 8, 2008, prior to the filing of this action, Split Rock and Mountain Dudes entered into a settlement agreement (the "Settlement Agreement"), in which Split Rock agreed to repurchase the property from Mountain Dudes for a little over $2.2 million. Split Rock paid a little more than $50,000 toward that settlement, then stopped making payments. On May 12, 2009, Split Rock filed an action in Utah state court seeking the return of the payments it had previously made under the Settlement Agreement, claiming breach of contract and unjust enrichment.

Mountain Dudes removed that action to this court, and Split Rock sought to remand. Judge David Sam denied Split Rock's remand motion, accepting Mountain Dudes' argument that the Settlement Agreement was, in effect, a part of this action. On January 22, 2010, this court consolidated Split Rock's refund action with this case. In connection with the consolidated complaint, Split Rock has moved for summary judgment on its claim that Mountain Dudes must return it the roughly $50,000 Split Rock paid.

## ANALYSIS

There are now four motions before the court: (1) the Association's motion seeking the dismissal of all Mountain Dudes's claims against it (2) the other Defendants' motion seeking the dismissal of all Mountain Dudes' remaining claims against them; (3) Mountain Dudes' motion seeking two separate trials; and (4) Split Rock's motion for summary judgment in its favor on its claims for a return of the payments it made on the Settlement Agreement. The court will rule on each of these motions below.

## I.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment "bears the initial burden of demonstrating an absence of a genuine issue of material fact." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citation omitted). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Id.* (citation omitted). "An issue is genuine 'if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When "applying this standard, [courts] examine the factual record in the light most favorable to the non-moving party." *Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. of Trs.*, 610 F.3d 558, 565 (10th Cir. 2010) (internal quotation marks and citation omitted). Finally, in this case, the court has determined that Utah law governs all of the tort and contract claims in this action.

## II.   THE ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT

Mountain Dudes alleges five cause of action against the Association: fraud; conspiracy; trespass and waste; negligence; and breach of the CC & Rs. The Association moves for summary judgment in its favor on each of these claims. In its opposition, Mountain Dudes only attempts to establish its negligence and breach of contract claims. For the reasons discussed below, Mountain Dudes has not met its burden of showing disputes of material fact on its negligence and breach claims and summary judgment is appropriate in the Associations's favor on them. Moreover, because Mountain Dudes abandons its other claims, judgment in favor of the Association on those claims is also granted.

### A.   Negligence Against the Association

To support its negligence claim, Mountain Dudes asserts that the Association breached a duty, which lead to harm to Mountain Dudes in the form of the arches being removed. But the only duty that Mountain Dudes alleges the Association violated was the purported duty to give Mountain Dudes notice of meetings. The only express source of that asserted duty Mountain Dudes cites is the CC & Rs.

The Association correctly argues that it should prevail on this claim. Generally, negligence claims are barred by the economic loss rule when a contract covers the relevant subject matter. The economic loss rule thus "prevents parties who have contracted with each other from recovering beyond the bargained-for risks." *Sunridge Dev. Corp. v. RB & G Engineering, Inc.*, 230 P.3d 1000, 1006 (Utah 2010) (citation omitted). Here, Mountain Dudes alleges that the Association violated a duty arising from the REPC– to give notice– and that Mountain Dudes suffered a loss which was covered by the REPC– the removal of a feature found to be out of compliance. Since the only source of the alleged duty is the CC & Rs, under the economic loss rule, Mountain Dudes' claim against the Association may only be brought for breach of contract.

There are two possible ways that Mountain Dudes's could avoid the application of the economic loss rule to their claim. First, Mountain Dudes could prove that it sustained some property damage aside from that set out in the CC & Rs. Second, Mountain Dudes could establish that the Association had a duty to Mountain Dudes that arose independent of the CC & Rs that the Association breached. *See id.* at 1006-07. Mountain Dudes has not shown that either of these exceptions applies in this case. First, removal of a feature that did not comply with the design code is a risk that was contemplated in the CC &Rs. Beyond the removal the arches, which were found to be out of compliance, there was no property damage in this case. Second, Mountain Dudes cites no independent duty that the Association had to inform Mountain Dudes

of meetings.[2]  Any such duty arose only from the CC & Rs.  Accordingly, the Association is entitled to summary judgment in its favor on Mountain Dude's negligence claim against it.

## B.     Breach of Contract Claim Against the Association

The Association also prevails on Mountain Dudes's twelfth cause of action for "lack of notice and due process and breach of the CC & Rs."  (Dkt. No. 127-1 at 25.)  Initially, the court construes this claim as one for breach of contract only, since notice and due process claims do not stand against a private parties.  In short, Mountain Dudes asserts that the Association breached the CC & Rs by failing to give Mountain Dudes notice of the hearings about the arches and their results and by failing to give Mountain Dudes the opportunity remove the arches.[3]

The Association argues that it is entitled to judgment on a breach claim because Mountain Dudes was the first to breach the CC & Rs.  The Association asserts that Mountain Dudes breached first in two ways, (1) by failing to provide the Association with proof that Mountain Dudes owned the property at issue and (2) by failing to designate a representative to exercise membership rights on Mountain Dudes' behalf.  As explained below, the Association does not prevail on the former argument, but is correct on the latter.

As for the question of whether Mountain Dudes was required to provide notice of ownership to be recognized as a member of the Association, there is a fact dispute on issues

_____

[2] Mountain Dudes cites "general standards of care" established by Utah statute for directors of non-profit corporations, Utah Code § 16-6a-822(a)(2) as a possible source of duty.  But Mountain Dudes does not cite any authority that this statute can be construed to impose any particular duties on the non-profit corporation, much less a duty of notice to owners.

[3] The parties also made additional arguments in supplemental briefing after the hearing on this matter was held.  Because the court is able to rule on the issues raised in the initial briefs, it will not rely upon any arguments made by either side in the supplemental briefs.

relevant to this claim.[4]  First, the CC & Rs are ambiguous on whether Mountain Dudes had to provide the Association with proof of ownership before the Association had to treat Mountain Dudes as a member for notice purposes.  One provision requires notice to the Association as part of a change of membership, while other provisions imply that any owner is deemed a member without regard to formal notice by the member.  Neither side has provided any evidence about what the drafting parties intended on this issue.  Moreover, there is evidence that the Association was aware that Mountain Dudes owned the property at issue.  If the Association knew of that ownership, it could be found that Mountain Dudes's failure to file proof of ownership, even if it was a breach, was not a material breach.

On the other hand, it is clear that the CC & Rs required Mountain Dudes to designate a representative before the Association could have been expected to give Mountain Dudes notice. Mountain Dudes argues that it did not have to designate because it is a limited liability company and Paragraph 3.1 of the CC & Rs expressly states that this duty applies to a "corporation or partnership."  But as a matter of contractual interpretation, the relevant portion of Paragraph 3.1 unambiguously applies to require limited liability companies to designate a representative.  In context, the relevant portion of Paragraph 3.1 is meant to require designation of a representative in situations in which a member is not a natural person, but rather a corporate entity.  Such designation is needed because if the member is a corporate entity, a dispute could arise as to who is authorized to represent the entity if different members take differing positions.  Nothing about Paragraph 3.1 or any other portion of the CC & Rs suggests that the Association agreed that it

---

[4] It is also worth noting that the CC & Rs do not expressly require notice of meetings to owners, but the Association has not argued that lack of notice was not a breach.

would, on its own, determine the individual responsible for exercising the rights of a limited liability company.

Given this context, the court finds that as a limited liability company, Mountain Dudes was required to designate to the Association a representative to act on its behalf. Moreover, the court finds that until Mountain Dudes made such a designation, it was not entitled to notice of meetings and other actions from the Association. That is, Mountain Dudes was in breach of its duty under the CC & Rs to designate a representative, and Mountain Dudes's breach preceded any breach by the Association. Further, Mountain Dudes's breach was material, because assuming the Association was required to give notices, Mountain Dudes' failure to designate prevented the Association from carrying out that duty. Accordingly, Mountain Dudes was the first to breach the CC & Rs and its breach of contract claim against the Association fails. *See Fisher v. Taylor*, 572 P.2d 393, 395 (Utah 1977) (first party to materially breach a contract "cannot be heard to complain of a subsequent breach").

In any event, as a factual matter, it appears that the Association likely believed that Split Rock, as Mountain Dudes's original vendor and subsequent lessee, had the right to exercise Mountain Dudes's rights under the CC & Rs. While the court stops short of finding that Split Rock was Mountain Dudes' designee for purposes of Paragraph 3.1 of the CC & Rs, it would not have been unreasonable for the Association to have relied on Split Rock as Mountain Dudes' *de facto* representative for purposes of exercising any rights under the CC & Rs with regard to the Property.

### C.     All Other Claims Against the Association

As mentioned above, Mountain Dudes makes no attempt to establish any dispute of material fact on any of its remaining claims against the Association, or to defend the legal merits of those claims. The court is persuaded by the Association's argument that it is entitled to judgment in its favor on these claims. Accordingly, summary judgment is GRANTED in the Association's favor on all of these claims as well.

### III.     MOTION BY SPLIT ROCK AND THE NON-SPLIT ROCK DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

For convenience, the court will refer to all Defendants other than the Association and Split Rock together as the "Non-Split Rock Defendants." Specifically, the Non-Split Rock Defendants are: Split Rock Fine Homes Real Estate Company, LLC; Split Rock Realty LLC; Split Rock Fine Homes, Inc.; Joseph L. Platt; Bartley Smith; Weldon Larsen; Kent L. Bylund; Mary Musgrave; and Brady Platt. Mountain Dudes has alleged all but its twelfth cause of action against some or all of Split Rock and the Non-Split Rock Defendants. Split Rock and all of the Non-Split Rock Defendants have together moved for summary judgment in their favor on all claims against them. The court will address the merits of this motion below.

### A.     Breach of Contract Claim

Split Rock and the relevant Non-Split Rock Defendants argue that they are entitled to judgment on Mountain Dudes' first cause of action for breach of contract claim against them. As an initial matter, the only written contract at issue in this action is the REPC, which incorporates the lease back agreement. The REPC and the lease back agreement were both between Mountain Dudes and Split Rock only. In supporting its breach of contract claim against Split Rock and the Non-Split Rock Defendants, Mountain Dudes characterizes its breach of contract claim as only

going to the REPC and the lease back agreement. Accordingly, the breach of contract claim is properly brought only against Split Rock alone, and to the extent that claim is brought against any other Non-Split Rock Defendant, it has no merit. Summary judgment is therefore proper on this claim in favor of those Defendants.

On another preliminary issue, the court has already found that Split Rock is liable to Mountain Dudes for a breach of the REPC, specifically the part of the REPC in which Split Rock covenanted that the property complied with the CC & Rs. (*See* Order at Dkt. No. 60.) The amount of damages to be awarded has not yet been resolved.[5] The court will thus construe Split Rock's motion for judgment in its favor on the breach of contract claim as one going to any other provision of the REPC and the lease back agreement.

Aside from the covenant in the REPC, Mountain Dudes points to only one express contractual provision that it contends Split Rock breached. That is, in an addendum to the REPC, Split Rock agreed that when the lease back terminated, it would "provide an additional one year home warranty that will cover 100% repair or replacement on structure, furniture, and fixtures." (Addendum No. One to REPC, Dkt. No. 70-2.) Mountain Dudes argues that this warranty obligated Split Rock to replace the two arches that were removed. But as a matter of contract interpretation, this warranty does not require Split Rock to replace features removed because they were found in violation of the CC & Rs. As a matter of plain language, when parties refer to "repair or replacement" in a warranty, they are considering items that are damaged

---

[5] Split Rock has pointed out that the court stated at a hearing that the amount of damages will include the difference in value of the Property with and without the two removed arches. It should be noted that in making this comment, the court did not intend to imply that Mountain Dudes will be precluded from recovering any other damages available under Utah law for breach of contract. If Mountain Dudes can prove such damages, it will be awarded them.

14

or destroyed by negligence or otherwise. *See Peterson & Simpson v. IHC Health Servs., Inc.*, 217 P.3d 716 720 (Utah 2009) ("As with any contract, we determine what the parties have agreed upon by looking first to the plain language within the four corners of the document.") (citation omitted). "Repair or replacement" do not, in their ordinary sense, refer to items purposely removed because they fail to comply with enforceable restrictive covenants.

For all these reasons, the court concludes that Split Rock is not liable for any breach of contract except for the breaching the covenant that the Property would comply with the CC & Rs. Split Rock's motion for judgment on the first cause of action is therefore GRANTED in part. Since the court has already found such breach, however, Split Rock's motion for partial summary judgment on count one is DENIED in part with respect to that breach.

**B.      Breach of Duty of Good Faith and Fair Dealing**

Split Rock and the relevant Non-Split Rock Defendants also move for judgment in their favor on Mountain Dudes' second cause of action for breach of the implied duty of good faith and fair dealing.

Initially, the Non-Split Rock Defendants correctly point out that a claim for a breach of the implied covenant of good faith and fair dealing "arises under [a] contract," and has "no independent existence outside of the contract." *Peterson & Simpson*, 217 P.3d at 722. In this case, Mountain Dudes alleges a breach of the implied duties that arose under the REPC. As already mentioned, however, none of the Non-Split Rock Defendants are parties to the REPC. Absent a contractual duty, the Non-Split Rock Defendants owned no duty of good faith and fair dealing to Mountain Dudes. Accordingly, to the extent that the good faith and fair dealing claim

goes to any Non-Split Rock Defendant, it has no merit. Summary judgment on this claim is therefore appropriate against the Non-Split Rock Defendants against whom it is brought.

On the other hand, Split Rock has not shown that, on the merits at least, it is entitled to judgment in its favor on the good faith and fair dealing claim against it. "To comply with his obligation to perform a contract in good faith, a party's actions must be consistent with the agreed common purpose and the justified expectations of the other party." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991) (citation omitted). In this case, a reasonable inference can be drawn that Split Rock and Mountain Dudes mutually understood that implicit in the deal they made in the REPC was that the nine arches would remain a permanent feature of the Property. The expectation that the arches would remain permanently appears justified. Moreover, it is fairly clear that once the leaseback period began, Split Rock and Mountain Dudes both justifiably expected that the nine arches would remain.

After the sale and during the lease period, Mr. Bylund and Mr. Platt, both principals of Split Rock, voted to tear the arches down. While neither the REPC nor the leaseback agreement expressly mandates that Split Rock would not take any action that resulted in the removal of the arches, reason allows that this duty is implied. Moreover, Split Rock did not give Mountain Dudes notice of the meetings leading up to the vote, or that the vote had been taken. Again, while there was no requirement in the governing agreements that Split Rock give Mountain Dudes this notice, the good faith duty to do so could be implied from the lease back provisions of the REPC. Finally, Split Rock tore down the arches without giving any notice that it was doing so to Mountain Dudes, thus cutting off any chance by Mountain Dudes to try to appeal the

decision before the arches were gone. Again, while taking this action was not expressly prohibited by the contract, Split Rock's doing so could be found to be in bad faith.

The duty of good faith and fair dealing, implied under Utah law in all contracts, requires that one party to a contract not take any action that will deprive the other party of the benefits of the bargain *See id.* at 199 ("Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract.") (citations omitted). In this case, the facts reasonably support a conclusion that Split Rock, through Mr. Bylund and Mr. Platt, took actions that had the effect of denying Mountain Dudes the benefits of the Property as Split Rock had agreed to deliver it- with nine arches. Such actions were likely in violation of the duty of good faith and fair dealing owed to Mountain Dudes implied in the REPC. Quite frankly, the court would be surprised if Split Rock had a colorable defense for taking these actions.

Notwithstanding the fact that Mountain Dudes may have presented sufficient evidence to avoid Split Rock's motion for summary judgment on the claim for breach of the implied duty, Split Rock may not recover on this claim. That is because the duty of good faith and fair dealing arose from the REPC. As explained above, however, Mountain Dudes has already prevailed on its claim that Split Rock breached the REPC. Moreover, the end result of Split Rock's breach of both the REPC and of Split Rock's likely breach of the implied contractual duty in this case is the same: the removal of the arches. Awarding any additional damages on the implied duty claim would thus result in a double recovery, which is not allowed under Utah law. *See Brigham City Sand & Gravel v. Machinery Ctr., Inc.*, 613 P.2d 510, 511 (Utah 1980) (ruling that "a party cannot have a double recovery for the same loss") (citations omitted). Accordingly, once

Mountain Dudes prevailed on its claim for breach of contract, Mountain Dudes' claim for breach of the implied duty of good faith and fair dealing became moot. Judgment is therefore GRANTED in Split Rock's favor on the second cause of action.

### C.     Fraud and Negligent Misrepresentation

In addition to its contractual claims, Mountain Dudes alleges fraud and negligent misrepresentation against Split Rock and all of the Non-Split Rock Defendants. In its third, fifth and sixteenth causes of action, Mountain Dudes alleges fraud and negligence, claiming the Defendants omitted a material fact in the sale of the Property. In its fourth, ninth, and tenth and fifteenth causes of action, Mountain Dudes alleges that Split Rock misrepresented material facts in the REPC. Mountain Dudes bases its sixth cause of action for conspiracy on the existence of the fraud claim. All Defendants against whom these claims are brought have moved for judgment in their favor. For the reasons discussed below, the court GRANTS their motion.

#### 1.     Omission-Related Claims

In support of its claims based on fraudulent and negligent omissions, Mountain Dudes relies on two facts. First, Mountain Dudes cites Design Committee meeting minutes from January 30, 2007 which note that with respect to the Property, "Dara [Tancredi of the Design Committee] brought up a concern that this home might encroach the established front setbacks of the development." (Dkt. No. 54-2 at p. 9.) The "Actions" taken as listed in the minutes was "None" and the "Follow Up" was for "Kent to look into the matter." (*Id.*) The meeting notes indicated that Joseph Platt and Mr. Bylund were present at that meeting. Second, Mountain Dudes points to a March 11, 2008 letter from Joseph Platt to Mountain Dudes which includes a statement that "certain members of [the Design Committee] had merely gone on record that they

might have a problem with the arches." (Dkt. No. 46-14.)  On the basis of these facts, Mountain Dudes argues that the relevant Defendants should have disclosed the concern Ms. Tancredi expressed at the January 30 meeting about the arches prior to the sale of the Property and did not do so, whether through fraud or negligence.

To prove an action for fraudulent non-disclosure, a plaintiff must show that "(1) the nondisclosed information is material, (2) the nondisclosed information is known to the party failing to disclose, and (3) there is a legal duty to communicate." *Hermansen v. Tasulis*, 48 P.3d 235, 241-42 (Utah 2002) (citation omitted).  Negligent omissions occur when one who has a pecuniary interest in a transaction does not take reasonable care to obtain and reveal material information. *See Atkinson v. IHC Hosps., Inc.*, 789 P.2d 733, 737 (Utah 1990).

Assuming Split Rock and all of the Non-Split Rock Defendants knew of or should have known of Ms. Tancredi's concern, the claim still fails on the other two prongs of the fraud claim. First, the only presently existing non-disclosed fact that arose pre-sale for which there is clear evidence is Ms. Tancredi's concern that the arches might not comply with the setback provisions of the CC & Rs.  Such a concern is not material.  As a matter of logic, either the arches were in violation of the setback provisions or they were not.  If the arches did comply with the provisions, then Ms. Tancredi's concern would be irrelevant, because her concern would not have provided any ground to remove the arches under the CC & Rs.[6]  If, on the other had, the

---

[6] To the extent Mountain Dudes seeks an inference that Ms. Tancredi's stated concern about the setback indicated a larger agenda on her part to get rid of the arches, the evidence does not reasonably support such an inference.  Even if it did, there is no evidence that the Defendants knew about such a plan.  Moreover, while Joseph Platt's letter states that more than one member had expressed a potential problem with the arches on the record, the only record for which Mountain Dudes presented evidence is the relevant meeting minutes, which reflect one concern by one member.

arches did indeed violate that setback provisions, then this violation, not Ms. Tancredi's concern, is the relevant material fact. As discussed below, however, there was no duty to reveal this fact in any event. Because Ms. Tancredi's concern is not a material fact, it cannot form the basis of either a fraud claim or a negligent misrepresentation claim.

Second, even if Ms. Tancredi's concern were material, the relevant Defendants had no legal duty to reveal it. In Utah, "[a] seller is not obligated to reveal all that he or she knows about the property involved." *Mitchell v. Christensen*, 31 P.3d 572, 574 (Utah 2001). Rather, "[i]f a defect can be discovered by reasonable care, the doctrine of caveat emptor prevails and precludes recovery by the vendee." *Id.* at 575. In this case, a buyer using reasonable care would have obtained any meeting minutes with entries concerning the Property. Had Mountain Dudes done so here, it would have been aware of the January 30 minutes and known about Ms. Tancredi's statement. Moreover, if there was indeed a setback violation involving the arches, which was the subject of Ms. Tancredi's concern, a buyer using reasonable care could have discovered that violation by reviewing the setback provisions of the CC & Rs and examining the Property to ensure compliance. (Of course, if there was no setback violation, Ms. Tancredi's stated concern was of no relevance.) In sum, Mountain Dudes, using reasonable care, could have discovered Ms. Tancredi's concern, and also investigated the underlying subject matter of that concern to see if it was valid. The relevant Defendants were thus under no legal duty to reveal the concern. Moreover, it is clear that Mountain Dudes satisfied any concern about whether the Property complied with the restrictive covenants by obtaining a covenant from Split Rock that the Property would be in compliance. There is no indication on this record that Mountain Dudes would have required anything further even if the claimed omitted evidence had been disclosed.

For the reasons discussed above, judgement in favor of all relevant Defendants on Mountain Dudes' fraud and negligence claims is appropriate to the extent that claim goes to an omission. Accordingly, judgment on Mountain Dudes' third cause of action (fraudulent concealment), fifth cause of action (constructive fraud for failure to disclose), and sixteenth cause of action (negligent non-disclosure) is granted in favor of all Defendants against whom they are brought.

## 2. Misrepresentation- Related Claims

In support of its alleged misrepresentation, Mountain Dudes points to an implied representation in the REPC that the Property had been approved by the Design Committee. Initially, the court notes that none of the Non-Split Rock Defendants made any representations in the REPC. Accordingly, this claim could only potentially have any merit against Split Rock. Judgment in favor of the non-Split Rock Defendants is thus appropriate on Mountain Dudes' affirmative misrepresentation causes of action.

As to Split Rock, Mountain Dudes asserts that by representing in the REPC that the Property complied with the CC & Rs, Mountain Dudes in effect represented that it had gotten approval for the arches from the Design Committee before the sale. To reach this conclusion, Mountain Dudes points to Section 12.1 of the REPC, which represents that the Property would be built in compliance with the CC & Rs. Mountain Dudes then points to Section 13.1 of the CC & Rs, which requires that the Design committee review and approve the construction of structures in limited common areas. Mountain Dudes also relies on a portion of Section 14 of the CC & Rs, which require that Design Committee approvals be obtained before submitting to the local municipality for a building permit.

Split Rock counters that it did not intend to represent that the Property had gotten approval from the Design Committee. Split Rock contends, and Mountain Dudes does not dispute, that the Design Committee "had never reviewed the design of patio homes," leading Split Rock to believe that the Design Committee was not enforcing the relevant CC & Rs related to approval. (Dkt. No. 70 at p. ix.)

Accordingly, it is undisputed that Split Rock did not make a knowingly false representation when it stated in the REPC that the Property complied with the CC & Rs. That is because while Split Rock may have been aware that the requirements of Sections 13.1 and 14 of the CC & Rs existed on paper, Split Rock did not anticipate that those requirements would be enforced. Split Rock therefore did not intend to represent that it had actually complied with those particular requirements. Accordingly, Mountain Dudes' claim for fraud by affirmative misrepresentation against Split Rock has no merit and judgment in Split Rock's favor is appropriate.

As for the negligent misrepresentation claim, Split Rock had no independent duty to inform Mountain Dudes whether or not the Design Committee had approved the Property. If such a duty arose, it was because Split Rock was entering into a contract with Mountain Dudes that addressed whether the Property complied with the CC & Rs. Likewise, the risk that the Property did not comply with the CC & Rs was one borne by Split Rock in the REPC. Accordingly, like the negligence claim against the Association, Mountain Dudes' negligence claim against Split Rock is barred by the economic loss rule. *See Sunridge Dev. Corp.*, 230 P.3d at 1006-07 (claims for negligent misrepresentations covered by a contract barred by economic loss rule).

For these reasons, Mountain Dudes' fourth cause of action (fraud by misrepresentation), ninth cause of action (intentional and negligent misrepresentation), tenth cause of action (recision based on fraudulent misrepresentation) and fifteenth cause of action (promissory estoppel) all fail against all Defendants against whom they are brought, including Split Rock. All Defendants are also entitled to judgment in their favor on the conspiracy claim, because Mountain Dudes based this claim upon the fraud claims.

### D.    Fiduciary Duty

The Defendants against whom Mountain Dudes brings its seventh cause of action for breach of fiduciary duty argue that they are entitled to judgment on this claim as a matter of law. The court agrees. Initially, Mountain Dudes concedes that it does not assert a traditional breach of fiduciary duty claim against these Defendants, but rather asserts a breach of the duty of a real estate agent to "be honest, ethical, and competent" in his or her dealings with the public. *Hermansen*, 48 P.3d at 241.

Even assuming that all of the relevant Defendants owed such a duty to Mountain Dudes, Mountain Dudes has not shown facts that constitute a breach of that duty. That is, the only breach of duty Mountain Dudes alleges is the failure to tell Mountain Dudes of Ms. Tancredi's concerns about the arches that she expressed before the sale. The court, however, has already concluded that these concerns were immaterial to the transaction. Mountain Dudes, moreover, has not established that a real estate agent's duty could extend to revealing immaterial facts about a transaction. Accordingly, Mountain Dudes' seventh cause of action fails against all Defendants.

E.     **Waste**

Mountain Dudes asserts its eighth cause of action for trespass and waste claim against the Association, Split Rock, and Split Rock Homes.  In short, Mountain Dudes asserts that it was waste to remove the two arches from the Property.  The relevant Defendants seek judgment in their favor on this claim.

First, as explained above, the court has already ruled that the Association is not liable on this cause of action.  Second, Mountain Dudes has not shown any facts that suggest that Split Rock Homes committed trespass or waste.  Accordingly, judgment in favor of both the Association and Split Rock Homes on this claim is appropriate.

Since Split Rock was leasing the Property when the arches were removed, the only question is whether Mountain Dudes has shown facts that would show that removing of the arches was waste.  Under Utah law:

> In all claims for waste, three essential elements must be met:
> 1. There must be an act constituting waste. [This means there must be an act constituting the destruction, misuse, alteration, or neglect of premises.]
> 2. The act must be done by one legally in possession.
> 3. The act must be to the prejudice of the estate or interest therein of another.

*Oquirrh Assocs. v. First Nat'l Leasing Co., Inc.*, 888 P.2d 659, 664 (citation omitted).  As to the first prong, there was an alteration or destruction of the premises; the arches were removed.  The question is whether the removal is legally cognizable as "waste" in this case.  The answer is no.  Here, Split Rock did not inadvertently knock down the arches or remove them totally on its own.  Instead, the Association ordered that the arches be removed because the arches violated the CC & Rs.  Split Rock complied with that order, albeit without notifying Mountain Dudes in advance.  Since the alteration or destruction was carried out as a requirement of the Association, who

Mountain Dudes agreed had authority to make such decisions, the removal was not waste. *Cf. Vicars v. First Va. Bank-Mountain Empire*, 458 S.E.2d 293, 266 (Va. 1995) ("It is axiomatic that a party cannot collect damages based on theories of waste or trespass when the party consented to the very actions alleged to constitute trespass or waste.") (citations omitted). Split Rock is thus also entitled to judgment in its favor on this claim.

### F.      Breach of Warranty Deed

Split Rock argues that Mountain Dudes has not shown facts that would tend to prove its eleventh cause of action for breach of warranty deed. Split Rock is correct. "Before the grantee can recover for breach of these covenants [warranty and quiet enjoyment], based upon either an actual or a constructive eviction, the grantee must establish that title has been affirmatively asserted against the grantee's title and possession, and that the title thus asserted is paramount or superior to the grantee's title." *Holmes Dev., LLC v. Cook*, 48 P.3d 895, 908 (Utah 2002). Simply put, Mountain Dudes has not presented any evidence that, post sale, anyone has affirmatively asserted title to the Property except Mountain Dudes.[7]  Split Rock is thus entitled to judgment in its favor on this claim.

### F.      Remaining Claims

Mountain Dudes did not oppose the relevant Defendants' motion for summary judgment on the thirteenth cause of action (ultra vires) and fourteenth cause of action (alter ego). Accordingly, Mountain Dudes has abandoned those claims and judgment is granted in favor of each Defendant against whom they are brought.

---

[7] In its opposition to Split Rock's motion on this claim, Mountain Dudes appears to confuse a claim for breach of warranty, which is based on contract, to breach of warranty deed, which is based on title.

## IV. MOUNTAIN DUDES' MOTION FOR SEPARATE TRIAL ON DAMAGES

Mountain Dudes has moved for separate trials relating to liability and damages. This motion is rendered moot by this Order. That is, the only issue left for trial at this point is what the damages should be on Mountain Dudes' successful breach of contract claim. Accordingly, this motion is DENIED.

## V. SPLIT ROCK'S MOTION FOR SUMMARY JUDGMENT ON ITS CONSOLIDATED CLAIM

Split Rock's claim for a refund of the approximately $50,000 it paid on the settlement agreement comes down to straight forward contract interpretation. According to Split Rock, if it stopped making payments, it would be entitled to its money back. Mountain Dudes answers that it is allowed to retain Split Rock's payments as a credit to a future judgment on Mountain Dudes' claims. The relevant provision reads as follows:

> If Split Rock fails to [make certain payments on a certain schedule], then the settlement is void ab initio and both Parties shall have the right to pursue all claims and defenses which they have had prior to entering into this Agreement. In the event of a default of Split Rock under the preceding sentence, all payments made by Split Rock to Mountain Dudes under the terms of this Agreement or the REPC shall be credited to any judgment Mountain Dudes obtains against Split Rock, if any.

(Settlement Agreement, Section 4, Dkt. No. 63-1.) Both sides agree that Split Rock did not pay in accordance with the schedule contained in the Settlement Agreement.

As a matter of contractual interpretation, the Settlement Agreement anticipates that Mountain Dudes would retain any payments Split Rock made until the damages issue in this action is resolved. Looking closely at the first sentence set out above, the term "void ab initio" does not refer to the "Agreement" as a whole, which is a defined term in the Settlement Agreement. (*Id.*) Rather, the sentence mandates that Split Rock's default will void the

"settlement." (*Id.*) Split Rock's default, therefore, was not intended to make the entire Settlement Agreement void ab initio, but only void the promise of the parties not to initiate litigation relating to the relevant events. The second sentence, however, refers to payments made under "this Agreement" upon a default by Split Rock. (*Id.*). Accordingly, the first sentence allows litigation to go forward but does not void the entire agreement, and the second sentence governs what happens to payments made under the agreement in the event of a default. Split Rock is therefore not entitled to judgment on its consolidated claims of breach of contract or unjust enrichment.

## VI.    CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

Split Rock's motion for summary judgment on its consolidated claims (Dkt. No. 62) is DENIED;

Split Rock and the Non-Split Rock Defendants' motion for partial summary judgment (Dkt. No. 69) is GRANTED in part and DENIED in part as follows:

judgment in favor of all Non-Split Rock Defendants is GRANTED on all claims brought against them;

Split Rock's motion is GRANTED in part with respect to the first cause of action for breach of contract on its argument that it only breached one specific provision of the contract, but DENIED in part because Split Rock is indeed liable for a specific breach;

Split Rock's motion is GRANTED in its favor with respect to all other claims against it;

Mountain Dudes' motion to bifurcate (Dkt. No. 72) is DENIED as moot;

the Associations' motion for summary judgment (Dkt. No. 88) is GRANTED; and

Mountain Dudes' motion to continue (Dkt. No. 115) is DENIED as moot.

As a result of this order, the only issue left for trial is damages related to Split Rock's breach of contract. The parties are instructed to meet and confer to attempt to stipulate to a scheduling order setting dates for all events remaining in this action, up to and including trial. The parties shall submit a joint order within 30 days of this Order, and if they cannot agree to such an order, they shall submit their proposed orders within that time.

DATED this 21st day of April, 2011.

BY THE COURT:

_____

Clark Waddoups
United States District Judge